IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-02258-NRN

J.S.,

Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

Defendant.

**OPINION AND ORDER**

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff J.S.[1] was not disabled for purposes of the Social Security Act. AR[2] 27. Plaintiff has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a United States Magistrate Judge under 28 U.S.C. § 636(c). Dkt. #11.

**Standard of Review**

In Social Security appeals, the Court reviews the decision of the administrative law judge (ALJ) to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,*

---

[1] Pursuant to D.C.COLO.LAPR 5.2, "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. Dkts. ##10, and 10-1 through 10-8.

500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes a mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). However, it must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d, 1067, 1070 (10th Cir. 2007). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

## Background

Plaintiff applied for disability insurance benefits and supplemental security income under Titles II and XVI in May 2020, alleging a disability onset date of April 1,

2017. AR 338–45. Both claims were initially denied on February 11, 2021, AR 215–35, and again upon reconsideration on July 12, 2021. AR 237–62.

Thereafter, Plaintiff filed a request for hearing on July 27, 2021. AR 263–64. The hearing was held on March 8, 2022, and the ALJ issued an unfavorable decision on March 30, 2022. AR 11–33.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1–7. This appeal followed.

In her March 30, 2022 decision, at the second step of the Commissioner's five-step sequence for making determinations,[3] the ALJ found that Plaintiff had the severe impairments of bilateral carpal tunnel syndrome, degenerative disk disease of the cervical and lumbar spine, left ulnar nerve entrapment, epilepsy, obstructive sleep apnea, and chronic obstructive pulmonary disease (COPD). AR 16.

The ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that meets the severity of the listed impairments in the regulations. AR 18–19. After making this finding, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can never climb ladders, ropes or scaffolds but can frequently climb ramps or stairs, stoop, kneel, crouch and crawl. He can frequently handle, finger

---

[3] The Social Security Administration ("SSA") uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through step four; the SSA has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

3

>and feel with the bilateral upper extremities. He can tolerate occasional exposure to pulmonary irritants, such as fumes, odors, dusts, gases or poor ventilation and no exposure to hazards such as unprotected heights, open bodies of water, and heavy mechanical machinery (like a jackhammer or tractor). He can never drive as part of job duties.

AR 19.

At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as a semiskilled delivery driver, automobile salesperson, or cabinet maker. AR 25.

However, at step 5, the ALJ found that Plaintiff possessed skills that are transferable to other skilled or semiskilled work—namely, that all of his acquired work skills from his position as an automobile parts sales person are readily transferable, so Plaintiff can make a successful adjustment to other work. AR 25. The ALJ then found that in light of Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could successfully adjust to. Accordingly, the ALJ found that Plaintiff and not been under a disability from April 1, 2017 (the alleged onset date), through March 30, 2022 (the date of the decision).

## **Analysis**

On appeal, Plaintiff first argues that the ALJ's finding at step 5 that he has transferable skills is not supported by substantial evidence, and the ALJ erred by failing to address medical factors in the transferability analysis. Further, Plaintiff argues that the ALJ did not properly evaluate Plaintiff's credibility concerning the intensity, persistence, and limiting effects of his symptoms. For the reasons set forth below, the Court disagrees.

4

## I. Transferability Analysis

### A. Identification of Transferable Skills

The Commissioner bears the burden of establishing that the claimant possesses transferable skills. *Haddock v. Apfel*, 196 F. 3d at 1084, 1088 (10th Cir. 1999). SSR 82-41 explains:

> Where transferability is at issue, it is most probable and meaningful among jobs in which: (1) the same or a lesser degree of skill is required, because people are not expected to do more complex jobs than they have actually performed (i.e., from a skilled to a semiskilled or another skilled job, or from one semiskilled to another semiskilled job); (2) the same or similar tools and machines are used; and (3) the same or similar raw materials, products, processes or services are involved. A complete similarity of all these factors is not necessary. There are degrees of transferability ranging from very close similarities to remote and incidental similarities among jobs.
>
> Generally, the greater the degree of acquired work skills, the less difficulty an individual will experience in transferring skills to other jobs except when the skills are such that they are not readily usable in other industries, jobs and work settings. Reduced residual functional capacity (RFC) and advancing age are important factors associated with transferability because reduced RFC limits the number of jobs within an individual's physical or mental capacity to perform, and advancing age decreases the possibility of making a successful vocational adjustment.

SSR 82-41, 1982 WL 31389, at *5. Further,

> When the issue of skills and their transferability must be decided, the adjudicator or ALJ is required to make certain findings of fact and include them in the written decision. Findings should be supported with appropriate documentation.
>
> When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the State agency's determination or ALJ's decision. Evidence that these specific skilled or semiskilled jobs exist in significant numbers in the national economy should be included (the regulations take administrative notice only of the existence of unskilled sedentary, light, and medium jobs in the national economy). This evidence may be VS statements based on expert personal knowledge or substantiation by information contained in the publications listed in

5

>  regulations sections 404.1566(d) and 416.966(d). It is important that these findings be made at all levels of adjudication to clearly establish the basis for the determination or decision for the claimant and for a reviewing body including a federal district court.

*Id.* at *7.

Plaintiff complains that the ALJ did not provide enough detail concerning the skills that Plaintiff acquired while working at O'Reilly Autoparts ("O'Reilly"). In his briefing, Plaintiff argues that he merely stated he was a driver for O'Reilly and "worked at the counter" which is not enough, by itself, to infer that he actually sold automobile parts. Instead, such statements might indicate that he only greeted customers and took orders. Plaintiff suggests that there was not information concerning what he did at the counter that would support the ALJ's finding of the skills he had acquired, and that the ALJ "did not identify the skills acquired specifically that transfer to auto parts sales." Dkt. #12 at 11.

Plaintiff's position is not supported by the record. In making her transferability findings, the ALJ (and the vocational expert upon whom she relied) referenced the Dictionary of Occupational Titles (DOT) description of auto sales part person, which fully describes all aspects of the job. The ALJ is entitled to accept the DOT job descriptions as reliable evidence when evaluating the demands and duties of a Plaintiff's past jobs. *Bowman v. Astrue*, 511 F.3d at 1270, 1273 n.3 (10th Cir. 2008) (citing *Haddock*, 196 F. 3d at 109). The vocational expert (VE) testified at the hearing that Plaintiff's past relevant work as an automobile parts salesperson was skilled with a specific vocational preparation (SVP) code of 5 and required the skills of customer service, performing sales, keeping records, taking inventory, and using a computer. *See* AR 53–56. This is

6

consistent with the DOT Listing, which provides that a salesperson, including one who sells auto parts:

> Ascertains make, year, and type of part needed, inspects worn, damaged, or defective part to determine replacement required, or advises customer of part needed according to description of malfunction. Discusses use and features of various parts, based on knowledge of machine or equipment. Reads catalog, microfiche viewer, or computer for replacement part stock number and price. Advises customer on substitution or modification of part when replacement is not available. Examines returned part to determine if defective, and exchanges part or refunds money. Fills customer orders from stock. Marks and stores parts in stockroom according to prearranged system. Receives and fills telephone orders for parts. Performs other duties as described under SALESPERSON (retail trade; wholesale tr.) Master Title. May measure engine parts, using precision measuring instruments, to determine whether similar parts may be machined down or built up to required size. Usually specializes in selling parts for one type of machinery or equipment and is designated according to part sold.

DOT 279.357-062. The ALJ adopted these findings, *see* AR 25, and thus, contrary to Plaintiff's position, did identify the skills Plaintiff acquired at O'Reilly.

The VE further testified that the claimant's acquired work skills from his position are readily transferable, AR 54–56, so the ALJ concluded that Plaintiff can make a successful adjustment to other work. Absent a conflict with the DOT, the ALJ is permitted to rely on the VE testimony to determine the transferability of skills. *Jordan v. Heckler*, 835 F.2d 1314, 1316 (10th Cir. 1987) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 0983)); *Haddock*, 196 F.3d at 1091. Plaintiff does not identify a conflict with the DOT and substantial evidence supports the ALJ's finding that, in light of the skills acquired at O'Reilly, Plaintiff would be able to perform occupations such as auto parts salesperson, auto accessory salesperson, and auto rental clerk.

To the extent Plaintiff asserts that there is a conflict in VE testimony, the argument fails. Plaintiff cites to AR 120, arguing that the finding from consulting vocational analyst Michelle Johnson's transferability analysis conflicts with the testimony from the VE who testified during Plaintiff's hearing. However, Plaintiff's citation is to preliminary findings from an agency fact finder. AR 110–22. It was found inaccurate under quality review, and Ms. Johnson's later findings demonstrated that the Plaintiff was *not* disabled. AR 142–160. The ALJ, therefore, could not consider the preliminary findings, which she acknowledged in her ruling. AR 24. The Court also cannot consider such findings.

Plaintiff further argues that today's auto parts and computer applications are not the same as the ones he used at O'Reilly in 2017, especially in light of changes to the automobile industry such as the rise of electric cars and hybrid vehicles. Plaintiff suggests "it is reasonable to assume auto parts stores use a different computer application that was used by [Plaintiff] in 2017," and "reasonable to believe that [Plaintiff] would not be able to walk into a job selling auto parts without more training which negates transferable skills." Dkt. #12 at 12.

The Court does not find such assumptions reasonable and agrees with Defendant that the assumptions are pure speculation and unsupported by either the record or case law. The Court rejects Plaintiff's unsupported argument that the automobile or auto parts industry has changed so significantly since 2017 that Plaintiff, who previously worked in auto parts, would be unable to successfully adjust.

Further, SSR 82-41's guidance is that "generally, where job skills are unique to a specific work process in a particular industry or work setting, e.g., a carpenter in the

construction industry skills will not be found transferable without the need for more than a minimal vocational adjustment by way of tools, work processes, work settings, or industry." However, "where job skills have universal applicability across industry lines, e.g., clerical, professional, administrative, or managerial types of jobs, transferability of skills to industries differing from past work experience can usually be accomplished with very little, if any, vocational adjustment where jobs with similar skills can be identified as being within an individual's RFC." *Id.*

Here, the VE found that Plaintiff had transferable skills and identified jobs in the *same industry*; namely, the auto parts and accessories industry. The third job that the VE identified was the auto rental industry, which requires even less particularized knowledge of parts and accessories, but is still generally within the automobile industry. Though Plaintiff may be required to learn the nuances of a new software system, the ability to learn and use a new system and learn about new or changing vehicles are universally applicable skills—skills he acquired at his previous job. Therefore, Plaintiff requires little vocational adjustment for the positions the VE identified. To hold otherwise would mean that a claimant would never be found to have transferable skills when he might be required to learn a new computer operating system, either at a different franchise or because the store decided to move to a new system. The Court declines to reach such a broad conclusion.

### B. Medical Factors

SSR 82-41 militates that "[a]ll functional limitations included in the RFC (exertional and nonexertional) must be considered in determining transferability." 1982 WL 31389, at *5. Plaintiff argues that the ALJ erred in her transferability analysis

9

because she failed to consider Plaintiff's medical factors. Though couched as an argument that the ALJ erred in the transferability analysis, Plaintiff argues that the ALJ's RFC is not supported by substantial evidence because the ALJ erred in analyzing Plaintiff's seizure disorder in the RFC. He argues that Plaintiff's "memory problems and periods of unconsciousness, and need to recover were not addressed by the ALJ." Dkt. #12 at 12.

But the ALJ explicitly and thoroughly addressed Plaintiff's seizure disorder, including the frequency and severity of the seizures. AR 20–24. The ALJ provided a detailed history of Plaintiff's seizures and cited to the medical evidence, which Plaintiff does not appear to challenge. During the relevant period, which is about five years, Plaintiff reported only a few grand mal seizures that would require an absence from work. AR 20–22. Though Plaintiff did suffer several breakthrough seizures, these were attributed to medication noncompliance, and Plaintiff admitted difficulty remembering to take his medications. AR 20, 21. It appears Plaintiff did not report any seizures 2020 and most of 2021. AR 22. In August 2021, Plaintiff fell from a ladder and struck his head. When being treated for this incident, Plaintiff reported to his doctor that he was having 3–4 breakthrough seizures a week. However, Dr. Collier, Plaintiff's treating physician, cited Plaintiff's ongoing noncompliance with his medication.

Though Plaintiff claimed that he had "lapses of consciousness three time a month," the ALJ found that such frequency of seizures was not documented in the record and that Plaintiff consistently failed to take his prescription medication. AR 23. Claimant also reported memory deficit, but the ALJ found this claim to be inconsistent

with the evidence, as Plaintiff did not complain of this symptom to his providers and there are no mental status exams documenting memory impairment. AR 24.

The ALJ also relied on medical opinions: two state agency medical consultants both found that Plaintiff required only normal seizure precautions at work. Notably, Plaintiff does not challenge the ALJ's findings with respect to the medical opinions. It appears that Dr. Collier did not provide a medical opinion, but the ALJ did note that the RFC was consistent with the restrictions imposed by Dr. Collier. *See* AR 24–25.

Thus, contrary to Plaintiff's suggestion, the ALJ's RFC analysis is far from boilerplate. *See* Dkt. #12 at 12. The ALJ's findings concerning Plaintiff's seizures and the resulting RFC and transferability analysis are all supported by substantial evidence.

Plaintiff's reliance on Dr. Collier's letter to the Appeal Council does not change the Court's conclusion. which provided updates on Plaintiff's conditions. Dr. Collier noted that Plaintiff's conditions can last up to several hours or days. AR 8. The letter asks that Plaintiff be given reduced hours to recover from seizures. It states that patient is "not able to drive and is recommended to avoid any situations where an alteration of awareness or loss of consciousness could result in injury, disability, or death to the patient or those around him." AR 8. The letter does not provide any information or additional restrictions that the ALJ had not already considered by the time of her decision. Indeed, the ALJ found that Plaintiff could not drive, could never be on ladders, ropes, or scaffolds, and could never be exposed to hazards such as unprotected

heights, open bodies of water, and heavy mechanical machinery. AR 19. Dr. Collier's 2022 letter is fully consistent with the RFC and Plaintiff fails to show otherwise.[4]

## II. Plaintiff's Credibility

Plaintiff next argues that the ALJ did not engage in a proper credibility analysis. Plaintiff argues that the ALJ was required to provide "specific, clear and convincing reasons" why she found Plaintiff's statements inaccurate. Dkt. #12 at 15–16. But this is not the standard.

> Under SSR 16-3p, the ALJ is required to
>
> explain which of an individual's symptoms [the ALJ] found consistent or inconsistent with the evidence in his or her record and how [the ALJ's] evaluation of the individual's symptoms led to [the ALJ's] conclusions. [The ALJ] will evaluate an individual's symptoms considering all the evidence in his or her record.

2017 WL 5180304, at *8 (Oct. 25, 2017). In evaluating a claimant's symptoms, it is not enough for an ALJ "to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" *Id*. at *10. Rather, "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id*.; *see also Kepler v.*

---

[4] Moreover, the Appeals Council reviewed Dr. Collier's letter, which was submitted after the ALJ's decision, and found that the letter did not require the Appeals Council to review the ALJ's decision. AR 2. Plaintiff does not challenge the Appeals Council's refusal to reconsider the ALJ's finding, so any such argument has been waived. *Anderson v. Dep't of Labor,* 422 F.3d 1155, 1174, 1182 n. 51 (10th Cir. 2005) (a plaintiff waives any argument not raised in her opening brief).

*Chater*, 68 F.3d 387, 391 (10th Cir. 1995) ("Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.").

Under this rubric, 20 C.F.R. § 404.1529(c)(4) gives the ALJ a framework with which to evaluate a claimant's statements concerning his symptoms:

> We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you.

20 C.F.R. § 404.1529(c)(4) (emphasis added); *see also* SSR 16-3p, 2017 WL 5180304, at *6 ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and the other evidence."). If the claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms "are inconsistent with the objective medical evidence and the other evidence, the ALJ must evaluate whether the claimant's "symptoms are less likely to reduce . . . his capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." *Id*. at *8; *Luthy v. Saul*, No. 17-cv-2206-PAB, 2020 WL 6938300, at *6 (D. Colo. Nov. 25, 2020) (same). So long as the ALJ sets forth the specific evidence he relies upon in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a 'formalistic factor-by-factor recitation of the evidence.'" *Keyes-Zachary*, 695 F.3d at 1167 (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

Plaintiff makes only the conclusory argument that the "record does not support the ALJ" because "[o]bjective evidence establishes [Plaintiff]'s seizures and his attempt to treat them." Dkt. #12 at 16. Plaintiff notes that the EEGs were "markedly abnormal" and that Dr. Collier's statement as a long treating specialist supports Plaintiff's subjective complaints of pain. These arguments are belied by a review of the evidence. For example, the ALJ noted that the normal EEGs on November 6 and 7, 2017, *as well as* the "markedly abnormal EEG" on November 19, 2017, "which was significant for clinical and electrographic activity." AR 21. As previously stated, the ALJ provided a detailed history of Plaintiff's seizures, which revealed fewer seizures than Plaintiff complained of, and that many of his seizures were "breakthrough seizures," attributable to his medication noncompliance. And the ALJ noted that even Dr. Collier repeatedly reported Plaintiff's failure to adhere to prescribed medication. AR 20–24. Thus, the record does not conclusively establish Plaintiff's "seizures and his attempt to treat them." To the contrary, there is substantial evidence that the Plaintiff did not credibly describe the frequency and severity of his seizures, their effects, or his attempts to treat them. "Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence," *Kepler*, 68 F.3d at 391 (internal quotation and citation omitted).

## Conclusion

For the reasons set forth above, the Commissioner's decision is **AFFIRMED.** Plaintiff's Complaint (Dkt. #1) is **DISMISSED**.

Dated this 28th day of July, 2023

BY THE COURT:

_____
N. Reid Neureiter
United States Magistrate Judge

Case No. 1:22-cv-02258-NRN   Document 23   filed 07/28/23   USDC Colorado   pg 15 of 15